**Integrated Project Services v. HMS Interiors Inc.**

*Joel Gusky,* for plaintiff.

*Joseph Gibley, Michael Flanagan* and *Kathleen Wilkinson,* for defendant.

ABRAMSON, *J.,* June 13, 2005—The court hereby reconsiders defendant HMS Interiors Inc.'s motion for judgment on the pleadings in light of the Supreme Court's opinion in *Bernotas v. Super Fresh Food Markets Inc.,* 581 Pa. 12, 863 A.2d 478 (2004). This case arises out of an accident at a construction site, and it concerns whether the prime contractor or the subcontractor should, ultimately, pay the damages connected with that accident.

Plaintiff Integrated Project Services (IPS) contracted with non-party Wyeth-Ayerst Inc. (the owner) to perform certain construction management work at the owner's Marietta facility (the prime contract). IPS subcontracted with HMS to perform a portion of that work (the subcontract). During the course of performing the subcontract work, an employee of HMS, nominal defendant Joseph Lloyd, was injured. Mr. Lloyd brought suit against the owner and IPS and eventually recovered $1,440,000 from IPS and $360,000 from the owner (the underlying tort action).

In this litigation, IPS claims that, pursuant to the terms of the subcontract and the prime contract, HMS must indemnify IPS and the owner for the amounts they paid in connection with the underlying tort action.[1] In the

---

1. The Pennsylvania Manufacturer's Association Insurance Company (PMA) is also named as a defendant in this action. PMA appar-

present motions, HMS argues that it never agreed to indemnify IPS for IPS' own negligence nor to waive its immunity as Mr. Lloyd's employer under the Workers' Compensation Act.

In deciding the parties' motions, the court is called upon to interpret the terms of the prime contract and the subcontract and to determine what is meant by them. Interpretation of the terms of a contract is a matter of law for the court. See *Madison Construction Co. v. Harleysville Mutual Insurance Co.,* 557 Pa. 595, 606, 735 A.2d 100, 106 (1999). "[W]hen a contract refers to a separate document, a court may examine the language of the other document to ascertain the intent of the parties." *West Development Group Ltd. v. Horizon Financial F.A.,* 405 Pa. Super. 190, 197, 592 A.2d 72, 75 (1991).

The indemnification provision of the subcontract attempts to incorporate by reference the indemnification provision of the prime contract. The subcontract between IPS and HMS provides as follows:

"[HMS] assumes entire responsibility and liability for any and all claims and/or damages of any nature or character whatsoever for which [IPS] shall be liable under the [prime contract] . . . with respect to the work covered by this subcontract and agrees to indemnify and save [IPS] and owner harmless from and against all claims, . . . occurring in connection therewith to the same extent

---

ently issued an insurance policy to HMS, which IPS claims did cover, or should have covered, IPS and the owner as well. As a result, IPS has brought claims against HMS for failure to obtain, and against PMA for failure to provide, such coverage. Such issues are not presently before this court.

and obligation to which [IPS] has assumed towards owner under the [prime contract] . . . limited to the scope of the subject matter of this subcontract." Complaint, exhibit B, ¶7.[2]

IPS' obligation under the prime contract is as follows:

"[IPS] shall indemnify, defend and hold harmless the owner from and against claims . . . arising out of or resulting from performance of the work . . . but only to the extent caused in whole or in part by negligent acts or omissions of [IPS] or any subcontractor . . . regardless whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder." Complaint, exhibit A, ¶3.12.1.

IPS asks the court to read the two contracts' clauses together to find that HMS has agreed to indemnify and save IPS harmless from and against all claims, including those caused by the negligent acts or omissions of IPS. However, the Supreme Court recently held that "unless expressly stated, pass through indemnification clauses violate the long-standing policy underlying the rule narrowly construing indemnification provisions. When the provision sought to be 'passed through' involves indemnification for acts of another party's negligence, the theory will not be applied unless the contract language

2. The prime contract is also incorporated by reference in other provisions of the subcontract. See *e.g.,* complaint, exhibit B, ¶6 (HMS agrees to "be bound to [IPS] by the terms of this subcontract and of the contract documents between the owner and [IPS] and shall assume towards [IPS] all of the obligations and responsibilities with respect to the work to be performed hereunder by [HMS] which [IPS], by the contract documents, assumes toward the owner.").

is clear and specific. Sound public policy requires an unequivocally stated intention to be included in the subcontract for this particular type of provision to pass through from the general contract. The general language of a standard incorporation clause cannot trump the specific language of the subcontract, when the former supports indemnification for negligent acts but the latter is ambiguous regarding the circumstances under which indemnification will occur." *Bernotas v. Super Fresh Food Markets Inc.,* 581 Pa. 12, 863 A.2d 478, 484 (2004). See also, *Greer v. City of Philadelphia,* 568 Pa. 244, 248-49, 795 A.2d 376, 379 (2002) (An indemnifying party may be held liable for the damages attributed to another's negligence only if the language of the [indemnification provision] clearly and unequivocally demonstrates that the indemnifying party intended to provide such indemnification. Such a rule is carefully designed to ensure that no party is unwittingly subjected to liability that is hazardous, unusual and extraordinary.); *Ruzzi v. Butler Petroleum,* 527 Pa. 1, 7, 588 A.2d 1, 4 (1991) ("if [the] parties intend to include within the scope of their indemnity agreement a provision that covers losses due to the indemnitee's own negligence, they must do so in clear and unequivocal language. No inference from words of general import can establish such indemnification.").

In this case, the subcontract does not contain an unequivocally stated intention to have HMS indemnify IPS for IPS' own negligence; instead of being clear and specific, the subcontract is, at best, ambiguous on the issue. Therefore, HMS need not indemnify IPS for IPS' own negligence.

In addition, HMS claims that it is not required to indemnify IPS for any harm that befell Mr. Lloyd because Mr. Lloyd was one of HMS' employees, and HMS is immune from such liability under the Workers' Compensation Act (WCA). Specifically, the WCA provides that

"In the event injury or death to an employee is caused by a third party, . . . the employer . . . shall not be liable to a third party for damages, contribution or indemnity . . . unless liability for such damages, contribution, or indemnity shall be expressly provided for in a written contract . . . ." 77 P.S. §481(b).

The courts have construed the WCA to mean that "a third party may not seek contribution or indemnity from the employer, even though the employer's own negligence may have been the primary cause of the employee's injury, . . . absent an express provision for indemnity in a written contract. . . . Case law has established that the indemnity provision in the Workmen's Compensation Act must be construed strictly, and general indemnity language such as 'any or all' or 'any nature whatsoever' is insufficient. . . . [I]n order for an employer to be held liable in indemnification for injuries to its own employees caused by the negligence of the indemnitee there must be an express provision for this contingency in the indemnification clause." *Bester v. Essex Crane Rental Corp.,* 422 Pa. Super. 178, 183-87, 619 A.2d 304, 306-308 (1993).

In this case, the subcontract does not contain an express waiver of HMS' WCA immunity. Instead, as set forth above, the subcontract attempts to pass through to

HMS the indemnification responsibilities outlined in the prime contract. The prime contract's indemnification provisions include what purports to be a waiver by IPS of its and HMS' WCA immunity vis-à-vis the owner.[3] However, under the reasoning set forth in *Bernotas,* and the strict requirements of *Bester,* the subcontract's pass through indemnification clause is not specific enough to create a waiver by HMS of its own WCA immunity vis-à-vis IPS.[4]

## CONCLUSION

For all the foregoing reasons, defendant's motion for judgment on the pleadings is granted.

---

3. The Prime Contract states that:

"In claims against any person or entity indemnified under this paragraph 3.12 by an employee of [IPS or] a subcontractor . . . , the indemnification obligation under this 3.12 shall not be limited by a limitation on amount or type of damages, compensation or benefits payable by or for [IPS] or a subcontractor under workers' or workmen's compensation acts, disability benefit acts or other employee benefit acts." Complaint, exhibit A, ¶3.12.2.

4. In its earlier ruling on HMS' preliminary objections, the court found that the waiver of WCA immunity did pass through from the prime contract to the subcontract. However, the court did not have before it the Supreme Court's views on pass through provisions, which were only recently set forth in *Bernotas.* Therefore, this court may revisit the issue in light of the change in the law. See *Zane v. Friends Hospital,* 575 Pa. 236, 243, 836 A.2d 25, 29 (2003) ("This general prohibition against revisiting the prior holding of a judge of coordinate jurisdiction, however, is not absolute. Departure from the rule is allowed in 'exceptional circumstances' when there has been a change in the controlling law or where there was a substantial change in the facts or evidence.").

## ORDER

And now, June 13, 2005, upon reconsideration of defendant HMS Interiors Inc.'s motion for judgment on the pleadings, both parties' motions for disposition of unresolved issues, the responses thereto, the memoranda in support and opposition, and all other matters of record, and in accordance with the opinion filed contemporaneously herewith, it is hereby ordered that said motion for judgment on the pleadings is granted, and Count I of the complaint against HMS is dismissed.